ADDISON,
*January*,
1843.

Blanchard &
Peake
*v.*
Stone.

JOSEPH BLANCHARD and ROYAL W. PEAKE *v.* GEORGE E. STONE.

*( In Chancery. )*

S. took a contract from D. to convey certain land, and assigned the same to B. & P., who finding, as they supposed, that the title was in a third person, obtained a conveyance from him, and gave up to D. the contract executed by him. *Held*, that B. & P. have no remedy in chancery against S.—the title to the land having failed—even though he might have fraudulently represented to them, upon the assignment, that D. had a good title.

When a party to a contract seeks to have it rescinded, he should be able to put the other party *in statu quo ;* or, if unable, it should not be through his own negligence or fault.

THIS was an appeal from a decree of the court of chancery, dismissing the orators' bill.

The orators, in their bill, set forth and charged, in substance, that the defendant, on the 17th of June 1836, received from one George D. Douseman a contract for the conveyance to him, by a good and sufficient deed of warranty, of seven and a half acres of land in Milwaukie, territory of Wisconsin, upon the payment of the sum of $7.000, in four equal instalments—one of which was paid down, and the other three were to be paid semi-annually ; that, on the 10th of September 1836, the defendant proposed to the orators to sell and transfer to them his interest in said contract, upon the payment to him of $3000, and, as an inducement to such purchase, falsely and fraudulently represented to them, that said land was owned by said Douseman, and was free from incumbrance ; that, relying on said representation, the orators purchased of the defendant, his right in said contract, and took from him an assignment thereof, and paid him a certain portion of said $3000, and gave their notes for the balance thereof, and executed a bond, to convey a part of said land which the defendant had covenanted to convey to another, and also to discharge the remaining liabilities of the defendant under said contract with Douseman.

And the orators further alleged that, having paid Douseman the sums remaining due on said contract, they discovered that he had no title to said land, but that the title remained in the United States, and that there was a pre-

ADDISON,
January,
1843.

Blanchard &
Peake
v.
Stone.

tended title in one Talbot C. Douseman, which was encumbered by a mortgage to a large amount, and had become absolute in the mortgagee.

And the orators further alleged, that the defendant had commenced a suit on one of the notes given by them for the balance of the said $3,000, and prayed that he might be enjoined from further prosecuting the same, and be decreed to give up the remaining securities in his hands, and refund to the orators the sums paid by them as aforesaid.

The defendant, in his answer, admitted the facts set forth in the orator's bill, excepting those touching his alleged fraud in connexion with the transfer of said contract, in regard to which he denied having made any of the representations charged upon him as fraudulent in the orator's bill.

And the defendant further alleged that the orators, having paid the balance due to Douseman, and finding that the title was not in him, but, as they supposed, in Talbot C. Douseman, took a conveyance of the land from said Talbot C. and gave up to said George D. Douseman the contract assigned to them by the defendant as aforesaid.

The answer was traversed and testimony was taken.

*C. Linsley*, for orators.

If the allegations of the bill are sustained, it is a case for the court to relieve.

1. Even if the defendant ignorantly asserted the title to be in George D. Douseman, and the land free from incumbrance, and orators relied on it, and have acquired no title, the contract may be set aside. The land was encumbered with a mortgage. No title could, therefore, be given by Douseman. 7 C. L. 87.

There is a material distinction between a contract entered into on the faith of the representations of the seller, and one where the purchaser buys on view and examination of the thing sold. Where the purchaser relies on the representations of an auctioneer, or where the property is at a distance from the place of making the contract, the seller will be held to great precision in his statement. 7 C. L. 87; 33 do. 408; *Bank of Columbia* v. *Hazen*, 1 Peters, 461; *McFerren* v. *Taylor & Co.*, 3 Cranch 280; 2 Cowen, 129; 5 Johns Ch. R. 174; 9 Ves. 19.

2. Whenever a contract is tainted with fraud, it is not merely voidable, but is treated in chancery and at law, as utterly void, if the party affected by it, chooses to bring the fraud to the notice of the court. *Norfolk* v. ——,. Camp. R. 337 ; Story's Equity, 375 to 379, 196, 202, 246 ; Chitty on Contracts, 113, 114.

The fraud in this case is not a falsehood about the value, quantity, &c. of the property, about which there might be an error of judgment, but a palpable misrepresentation designed to inspire confidence in the title. 2 Esp. N. P. 262.

When a fraud is practiced, in making a contract, it is a reasonable presumption that it would not have been made but for the fraud ; and hence it is to be set aside. 3 Pet. Cond. R. 527, 533 ; 3 Pet. 218. A court of chancery will never permit a party to obtain an advantage by the commission of a fraud.

The title of the land was in the United States—not subject to entry. Hence, any contract for the conveyance of it must be held void, for, as the whole people who own it, have a direct interest in the most unrestrained and free competition when it is brought into market, every act, having a tendency to raise up interests adverse to the public right, is against public policy.

To suffer contracts to be made in relation to the public domain, before a right can be acquired therein, would foster a dangerous spirit of speculation, injurious to the public interest. Contracts injurious to the public interest will not be permitted. Those in restraint of trade, or affecting the course of justice, and trading with an enemy are familiar examples. Chitty on Contracts, 217.

It is insisted that orators should have sooner objected, and that taking the deed from T. C. Douseman precluded them from rescinding the contract. But the decision of the land-office was not till March, 1838, when all had been done by orators they have ever done. The exact time when the orators knew of the failure of the title does not appear ; but, it is to be presumed, from their residing in Vermont, that considerable time would elapse. The court can direct the orators to release to defendant, and that their names may be used in prosecuting Douseman. When a contract is obtained by fraud, the court will not allow technical objections

ADDISON,
January,
1843.

Blanchard &
Peake
v.
Stone.

or lapse of time to screen the party guilty of the fraud. When the money was paid, it was necessary to do so, to save a forfeiture, and it could not then be known but Douseman might procure a title. If there was some delay, after orators came to a knowledge of the total failure of title, their rights should not be affected by it, as the situation of the parties was, in the mean time, changed. *Haddock* v. *Williams*, 10 Ves. 570 ; *Boyer, Ex.* v. *Grantly*, 3 Pet. 210.

*E. D. Barber*, for defendant.

I. The orators are precluded from the relief sought, by their own acts. They proceeded, after discovering the alleged fraud, with the contract—made payments to George D. Douseman—discharged the bond between him and defendant—took a deed from T. C. Douseman, and, by a variety of acts, treated the contract as their own, and put it out of their power to place the defendant in the same situation he was in when the bargain was made between him and orators. They have never made any offer to rescind, and the contract still remains open. It is a general rule of law, that a party is not entitled to rescind a contract, unless the other party can be placed *in statu quo*. Chit. Con. 573.

Equity follows the law, and at law a party cannot recover back the price of a chattel, while the contract is left open and is treated by him as a subsisting contract, and, especially, while he retains and uses the chattels purchased. Chit. Con. 573 ; *Powers* v. *Barrett*, 1 Term R. 133 ; *Taylor* v. *Hare*, 1 New R. 260 ; *Shepard* v. *Temple*, 3 N. H. R. 455 ; *Ferguson* v. *Carrington*, 9 B. & C. 59 ; *Hunt* v. *Silk*, 5 East, 440 ; *Curtis* v. *Hannay*, 3 Esp. 80 ; *Fleming* v. *Simpson*, 1 Camp. 40, note ; Stark. Ev. 1646 ; 7 East. 571 ; 2 Camp. 530 ; do. 416 ; 1 Stark. R. 140–477 ; *Archer* v. *Barrington*, 3 Stark. R. 175 ; *Speller* v. *Westlake*, 2 Barn. & Adol. 155 ; *Greenleaf* v. *Cook*, 2 Wheaton, 13 ; *Conner* v. *Henderson*, 15 Mass. R. 319.

In *Lawrence* v. *Dale et al.*, 3 Johns. Ch. R. 23, Chancellor Kent lays down the rule as follows :—" When a party 'intends to abandon or rescind a contract, on the ground of 'a violation of it by the other, he must do so promptly and 'decidedly, on the first information of such breach. If he 'negotiates with the party after knowledge, and prompts him

ADDISON,
January,
1843.

Blanchard &
Peake
v.
Stone.

" to proceed in the work, it is a waiver of his right to rescind
' the contract." Affirmed in Error, 17 Johns. 437, in
*McNevins et al. v. Livingston et al.* 1 Am. Ch. Dig. 157;
do. 159.

If a party be induced to purchase a chattel by fraudulent
representations of the seller, and, after discovering the fraud,
continues to deal with it as his own, he cannot recover back
the money paid for it. *Campbell* v. *Fleming*, 28 C. L. 29;
*Archer* v. *Bamford*, 3 Stark. R. 175; *Kimball* v. *Cunning-
ham*, 4 Mass. R. 502; *Barton* v. *Stewart*, 3 Wendell, 236;
1 Am. Ch. Dig. 159. And a discovery of a new ingredient
in the fraud will not revive the right to rescind. 28 C. L.
above cited; *Brimley* v. *Tibbetts*, 7 Green, 70; Chit. Con.
573, note 1. And if, having a right to rescind, he does any
act to affirm the contract, he cannot afterwards rescind it.
4 Mass. 502.

By commencing a suit against T. C. Douseman, the orators
affirmed the contract. When a contract has been procured
by fraud, and the party seeks to rescind it in equity, the rule
laid down by Mr. Jeremy, p. 484, is:—" This court will not,
' even when some consideration is given, which cannot be
' restored, rescind a contract, unless it is able to replace the
' parties in the situation in which they would have been if
' the same had not been entered into." 1 Hen. C. Dig.
143, 156, 157, 158.

II. The party who seeks a remedy by rescinding a con-
tract, for some supposed wrong, must be guilty of no default
himself. Chit. Con. 573. And the hardship of which he
complains, must not be the consequence of his own folly or
misconduct. *McDonald* v. *Neilson*, 2 Con. R. 139.

Equity does not favor him who has been guilty of laches
himself. If he who seeks relief and damages has been
guilty of an act or neglect, by which the opposite party has
been deprived of any right or advantage he would otherwise
have had, he has forfeited all right to assistance. The ora-
tors have been guilty in this respect. 1. Because they did
not repudiate the contract upon the discovery of the fraud.
2. Because they took a deed from T. C. Douseman, which
they were under no obligation to take by the contract be-
tween G. D. Douseman and defendant. 3. Because they
did not refuse to take such deed and pursue G. D. Douse-

ADDISON,
January,
1843.

Blanchard &
Peake
v.
Stone.

man upon the contract, if he refused to give his own deed.
4. Because they did not promptly and effectually pursue T.
C. Douseman on the covenants of his deed. It does not
appear but that both the Dousemans are responsible.

The opinion of the court was delivered by

HEBARD, J.—The orators seek to recover back a sum of
money, paid to defendant, and also to have him enjoined
from prosecuting a suit for the recovery of a further sum, and
that he shall be decreed to give up certain securities which
he holds against the orators. The ground upon which this
is sought, is that of alleged fraud in obtaining the money and
securities in question.

It appears that that the defendant, having obtained a writ-
ten obligation from George D. Douseman, to convey to him
certain land, upon payment, to be subsequently made, of cer-
tain sums of money, sold and assigned his interest therein, to
the orators, upon the payment, by them, of the money, and
execution of the securities in question, among which securi-
ties was a bond by which they obligated themselves to com-
plete the payments to Douseman, necessary to perfect his
obligation to convey.

In the assignment of the contract from the defendant to the
orators, there is nothing said about any title in Douseman,
and no covenant or agreement in relation to the title to the
land in any way. The orators paid the several instalments
to Douseman, as they became due, except the last, which
they paid six months in advance. At this time the orators
had ascertained that George D. Douseman had no title to the
land, but that the title was in one Talbot C. Douseman, as
they supposed, and this subject to a heavy mortgage.

The question here arises, what ought the orators to have
done ? Should they have proceeded to pay up what was
behind, after learning that George D. Douseman had no title ?
It is said, that unless they did, they would have had no claim
upon him for what was paid, as there was a stipulation in the
contract, "that if said payments should not be made by the
time specified, in said contract, said Stone should forfeit all
right, legal or equitable, to a conveyance of said premises."
But, in that case, it was not necessary to make the last pay-
ment before the time. After they had learned these facts,

ADDISON,
January,
1843.

Blanchard &
Peake
v.
Stone.

ought they not to have notified the defendant, and given him the offer of directing what should be done, in case they intended to have recourse to him ?—for it is a maxim in chancery, that " he that seeks equity should do equity." These are all questions worthy of consideration, when looking after the equitable relations of the parties. But the orators, it may be, in the spirit of speculation so prevalent at that time, were not admonished to hesitate by the discovery of defective title, but consented to take a deed from Talbot C. Douseman, and gave up their contract and covenant for a good title, from George D. Douseman. Having done this, they had taken an entirely new security—such as the defendant had never relied upon, and such as would, under no circumstances, be available to him. In doing this, the orators took a step which they cannot retrace. When they found the title to be defective, and before giving up the contract, if they had chosen to have rescinded their contract with defendant, they could have placed him in *statu quo*. They could have put back into his hands, the covenants of George D. Douseman, which would have been good security for the defendant,—or they might have insisted upon a satisfactory deed from Douseman, and, in case he did not furnish it, with that paper they could have called upon him for their recompense. But when they bargained away the covenants and agreements of George D. Douseman, for those of Talbot C. Douseman, it became a matter of their own, and they have induced a state of things in which the defendant did not participate, and for which, if he is made accountable, he is left without a remedy. The transaction between the orators and defendant, must be regarded as a negotiation for the contract. It was not a purchase of the land, for the defendant had no title to it, and did not pretend to have any, but merely held the obligation of Douseman to give him a title.

This view of the case enables us to pass over many of the points raised in it, for, this point being settled, it is of little importance how is the law, or how are the facts in other respects. For, even if in point of fact, the defendant made false representations in relation to Douseman's title to the land, that would not justify the orators, after having discovered the defect in the title, still to go on and experiment upon the title, and if they, in the chapter of accidents and

Blanchard &
Peake
v.
Stone.

chances, could make something, to keep it, and if not, after having thrown away all security for themselves or the defendant, then to come back upon him for relief.

That the defendant made some representations about the title of Douseman, that were not true, is very probable—but that he knew them to be false, we have no very conclusive evidence.

The decree of the chancellor is affirmed.